UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS THOMAS,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br><br>    Defendant. | Case No. 21-cv-10007-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 24 |

Defendant Kilolo Kijakazi,[1] the former acting Commissioner of the Social Security Administration ("SSA"), acting in her official capacity, denied Plaintiff Curtis Thomas's application for Supplemental Security Income ("SSI"). Dkt. No. 1. Plaintiff seeks judicial review of that decision. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for summary judgment, *see* Dkt. No. 23, **DENIES** Defendant's cross-motion for summary judgment, *see* Dkt. No. 24, and remands this matter to the SSA for further proceedings.

**I.  BACKGROUND**

In May 2018, Plaintiff filed an application for SSI, alleging a disability onset date of January 1, 1965. AR 212–20.[2] Plaintiff listed as impairments "learning disability," depression, difficulty sleeping, "substance abuse issue," and paranoia. AR 71–72, 89. The Agency denied Plaintiff's application initially in July 2018, and on reconsideration in October 2018. AR 86–87, 102–03.

---

[1] Martin O'Malley is the current Commissioner of Social Security. He is substituted for his predecessor, Dr. Kilolo Kijakazi, as Defendant in this action under Fed. R. Civ. P. 25(d).
[2] Due to its size, the Administrative Record, filed as Dkt. No. 19, is broken into sixteen parts. The Court refers to these documents collectively as the "AR," and cites to its internal pagination. Plaintiff also amended his alleged onset date to May 21, 2018, his application date. AR 69–70.

1    Plaintiff appeared before an Administrative Law Judge ("ALJ") in July 2020.  AR 37–70.
2    The ALJ followed the five-step sequential evaluation process mandated for disability claims under
3    20 C.F.R. § 404.1520(a) and ultimately found that Plaintiff was not disabled.  AR 17–36.  The
4    ALJ accordingly denied Plaintiff's request for benefits.  *Id*.  The Appeals Council denied
5    Plaintiff's request for review in October 2021.  AR 1–6.

6    Step One requires the ALJ to determine whether the claimant is working in "substantial
7    gainful activity," defined as work done for pay or profit and involving significant mental or
8    physical activities.  *See* 20 C.F.R. §§ 404.1520(b), 404.1572.  At Step One, the ALJ found that
9    Plaintiff had not engaged in "substantial gainful activity" during the relevant period.  AR 22.

10   Step Two directs the ALJ to determine whether the claimant has a severe impairment or
11   combination of impairments that significantly limit her ability to work.  *See* 20 C.F.R.
12   § 404.1520(c).  At Step Two, the ALJ found the following alleged impairments to be severe: mild
13   intellectual disorder; adjustment disorder with depressed mood; PTSD; alcohol use disorder; mild
14   retrolisthesis of the lumbar spine; gastroesophageal reflux disease ("GERD") with esophagitis; and
15   obesity.  AR 22.  While the ALJ considered Plaintiff's hernia in assessing his residential
16   functional capacity ("RFC"), the ALJ determined that the evidence did not establish that this
17   impairment "more than minimally" limited Plaintiff's ability to perform basic work activities,
18   given that Plaintiff regularly denied any associated pain or problems from the hernia.  *Id*.

19   At Step Three, the ALJ determines whether the claimant's impairment, or combination of
20   impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P,
21   Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  "That bureaucratic mouthful
22   means the ALJ must see if the claimant's impairment matches the criteria for disabling conditions
23   listed in the regulations."  *Petrini v. Colvin*, No. 14–CV–01583–JD, 2015 WL 5071931, at *1
24   (N.D. Cal. Aug. 27, 2015), *aff'd sub nom. Petrini v. Berryhill*, 705 F. App'x 511 (9th Cir. 2017)
25   (citation omitted).  At Step Three, the ALJ determined that Plaintiff did not have an impairment or
26   combination of impairments that met or medically equaled the required criteria.  AR 23-25.  The
27   ALJ also considered whether the "paragraph B" criteria were satisfied, and concluded that
28   Plaintiff's mental impairments did not result in one extreme limitation or two marked limitations

in a broad area of functioning. *Id.*

At Step Four, if the claimant does not have a listed impairment, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); *see also id.* § 404.1545. In considering the claimant's symptoms, the ALJ must first consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *See id.* § 404.1529; Social Security Ruling 16-3p. The ALJ must consider all impairments, even those that are not severe. 20 C.F.R. § 404.1545(a)(2). Once the underlying impairment has been shown, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. *See id.* § 404.1529.

Here, at Step Four, the ALJ determined that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), "except that he must avoid concentrated use of hazardous machinery and concentrated exposure to unprotected heights;" work is limited to "simple" as defined in the Dictionary of Occupational Titles ("DOT") at specific vocational preparation ("SVP")[3] levels 1 and 2, "routine and repetitive tasks;" and "[h]e can work in a low stress job, defined as requiring only occasional decision making and only occasional changes in the work setting." AR 25. In reaching the RFC determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record" for several reasons. AR 26.

Lastly, at Step Five, the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the ALJ concluded that, based on the testimony of the

---

[3] SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level— "[s]hort demonstration only") to 9 (the highest level—over 10 years of preparation). *Id.*

vocational expert and considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of successfully finding work that exists in "significant numbers in the national economy." AR 31. The ALJ thus concluded that Plaintiff is not disabled under the Act. *Id.*

## II. LEGAL STANDARD

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The threshold for "substantial evidence" is not high: "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "The evidence 'must be more than a mere scintilla,' but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. [T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (internal quotation marks and citations omitted).

## III. DISCUSSION

Plaintiff argues that the ALJ harmfully erred in denying his claim for disability benefits. First, Plaintiff contends that the ALJ erroneously found that his hernia was not a severe

4

1  impairment at Step Two.  Dkt. No. 23 at 11.  Second, Plaintiff asserts that the ALJ's "paragraph
2  B" criteria findings are not supported by substantial evidence.  *Id*. at 11–15.  Third, Plaintiff
3  argues that the ALJ erred in weighing four medical opinions in the record.  *Id*. at 15–20.
4        Although the Court recognizes and applies the controlling deferential standard of review
5  and finds that the ALJ did not err in the Step Two analysis, it finds that the ALJ erred with respect
6  to the analysis of two of the medical opinions highlighted by Plaintiff.  The Court thus will
7  remand for further proceedings consistent with this order.

      **A.**    **Step Two**

           **1.**    **Legal Standard**

10        At Step Two of the five-step sequential analysis, the ALJ must assess the medical severity
11  of a claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii); *Webb v. Barnhart*, 433 F.3d 683, 686
12  (9th Cir. 2005).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless
13  claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A severe impairment "must be
14  established by objective medical evidence from an acceptable medical source."  20 C.F.R.
15  § 404.1521.  The claimant bears the burden of showing that she has a medically severe impairment
16  or combination of impairments.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the
17  burden of proof is on the claimant as to Steps One to Four of the sequential analysis).
18        An impairment or combination of impairments is considered "severe" if it "significantly
19  limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R.
20  § 404.1520(c).  "Basic work activities are 'abilities and aptitudes necessary to do most jobs,'"
21  *Smolen*, 80 F.3d at 1290, including "walking, standing, sitting, lifting, pushing, pulling, reaching,
22  carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering
23  simple instructions; use of judgement, responding appropriately to supervision, coworkers, and
24  usual work situations; and dealing with changes in a routine work setting," SSR 85-28, 1985 WL
25  56856 at *3.  "An impairment or combination of impairments can be found 'not severe' only if the
26  evidence establishes a slight abnormality that has 'no more than a minimal effect on an
27  individual[']s ability to work.'"  *Smolen*, 80 F.3d at 1290 (citations omitted).  If the claimant has a
28  severe medically determinable physical or mental impairment, or a combination of impairments,

that has lasted or is expected to last for at least 12 continuous months, the claimant is disabled. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

### 2. Analysis

Here, the ALJ stated that "While I have considered the hernia in assessing [Plaintiff's RFC], the evidence does not establish that this impairment more than minimally limits [Plaintiff's] ability to perform basic work activities." AR 22. This determination was supported by substantial evidence, and the record does not compel a conclusion that Plaintiff's hernia qualified as a severe impairment. In September 2018, Dr. Diaz ordered diagnostic evaluations for the hernia, including an ultrasound, and referred Plaintiff to surgery. AR 596–97. At a follow-up appointment, Plaintiff reported that the hernia was not becoming larger and does not cause him pain. AR 580. The treating physician noted that Plaintiff's hernia was not tender, did not appear to be interfering significantly with his daily activities, and that he did not have an urgent need for hernia repair, but that he could be a candidate for elective hernia surgery "should he become symptomatic." AR 583. Plaintiff agreed to continue with this observational approach. *Id*. Through 2019 and 2020, Plaintiff continued to report no problems with his hernia. *See, e.g.,* AR 967 (June 2019); 961 (August 2019); 960 (January 2020).

"The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted). Though the record is clear that Plaintiff does have a hernia, substantial evidence supported the ALJ's finding that this impairment is not severe for purposes of the Step Two analysis.[4] *See, e.g.*, *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"). Despite finding that Plaintiff's hernia no more than minimally limited his ability to

---

[4] Plaintiff's assertions that all of the doctors in this case found that his hernia was a severe impairment, Dkt. No. 23 at 11, Dkt. No. 25 at 2, inaccurately characterize the record. The hernia is listed as a "severe" impairment in two places on the Agency's forms denying Plaintiff's SSI application. *See* AR 78, 93. The State Agency consultants went on to explain that Plaintiff reported experiencing no pain associated with his hernia. *See* AR 81, 97 (Plaintiff makes no complaints about his hernia and reported he can probably lift up to 60 pounds). The rest of Plaintiff's citations to the record consist of instances where a particular doctor simply listed the hernia as one of Plaintiff's diagnoses. *See* AR 347, 372.

1    perform basic work activities, the ALJ still considered this impairment in formulating Plaintiff's
2    RFC. *See* AR 22; *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional
3    capacity based on all the relevant evidence in your case record."); *id.* § 404.1546(c) (the ALJ "is
4    responsible for assessing your residual functional capacity"). Accordingly, because the ALJ's
5    interpretation of the evidence related to Plaintiff's hernia was rational, *Thomas*, 278 F.3d at 954,
6    the Court finds that there was no error in the Step Two analysis.

### 3. **Harmless Error**

Even if the ALJ erred by failing to conclude that Plaintiff's hernia was a severe impairment, any such error was harmless. A claimant is prejudiced at Step Two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."); *Hickman v. Comm'r of Soc. Sec. Admin.*, 399 F. App'x 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and thus, step two was already resolved in Hickman's favor."). Furthermore, an ALJ's failure to include an impairment in the Step Two analysis is harmless if the ALJ considers the functional limitations that flow from that impairment at subsequent steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to list plaintiff's bursitis as a severe impairment at Step Two was harmless where the ALJ considered limitations caused by the condition at Step Four).

Here, the ALJ determined that Plaintiff had the following severe impairments: mild intellectual disorder; adjustment disorder with depressed mood; PTSD; alcohol use disorder; mild retrolisthesis of the lumbar spine; GERD with esophagitis; and obesity. AR 22. The ALJ then proceeded to the Step Three analysis. *See* AR 23. Because Plaintiff's claims were not screened out at Step Two, he was not prejudiced by any error in the Step Two analysis. At Step Four, the ALJ also "considered all symptoms and the extent to which these symptoms can reasonably be

7

accepted as consistent with the objective medical evidence and other evidence." AR 25; *see, e.g.*, *Sara Ann W. v. Comm'r of Soc. Sec.*, Case No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *5 (E.D. Wash. Aug. 27, 2018) ("the ALJ specifically noted that she considered *all symptoms* in assessing the [RFC] . . . Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.") (emphasis in original). Accordingly, the Court concludes that the ALJ did not commit harmful error in the Step Two analysis.

### B. Evaluation of Medical Opinions

#### 1. Legal Standard

"There is no longer a hierarchy of medical opinions that determines how the opinions are weighed." *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (citing *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)). "[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. In reviewing medical opinions, an ALJ must "articulate . . . how persuasive" it finds "all of the medical opinions" based on several factors. 20 C.F.R. § 404.1520c(b). The two most important factors are supportability and consistency. *Id*. Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ may, but is not required to, explain how other factors were considered, including the source's relationship with the claimant, the length and purpose of the treatment relationship, the frequency of examinations, and the source's specialization. 20 C.F.R. § 404.1520c(b)(2), (c).

#### 2. State Agency Medical Consultants

Plaintiff contends that the ALJ erred by finding persuasive the medical opinions of the State Agency medical consultants as to his physical impairments. *See* Dkt. No. 23 at 15–16. The Court finds no error with respect to the ALJ's treatment of these opinions.

The State Agency consultants opined that Plaintiff had no postural limitations, noting that

he made no complaints regarding his hernia and reported that he can "probably" lift up to 60 pounds. AR 81, 96–97. The ALJ determined that the consultants' opinions were persuasive because they were (1) supported by unremarkable examination findings by examining physician Eugene McMillan, M.D., during a June 2018 consultive examination and (2) consistent with subsequent treatment records with Plaintiff's primary care physician, Alejandro Diaz, M.D. AR 28; *see also* AR 344–47 (Dr. McMillan's internal medicine evaluation). In support of this assessment, the ALJ observed that Plaintiff's physical examinations in treatment consistently showed a normal gait, strength, and neurological findings, and he consistently reported no hernia pain. AR 28. The ALJ further noted that, in contrast to Plaintiff's hearing testimony, the written record showed that he reported walking an hour daily for exercise, and records in 2019 and 2020 showed that he reported no complaints regarding his back. *Id.* At the hearing, Plaintiff testified that his back pain is limited to the morning when he gets up, and it does not persist throughout the day. *Id.* And he reported to Dr. McMillan that he believed he could lift 60 pounds. *Id.* However, the ALJ determined that the weight of the evidence did not support the postural limitations opined by Dr. McMillan, given that Dr. McMillan's examination findings did not show limitations in range of motion or strength and did not show positive neurological findings.[5] *Id.* The ALJ then concluded that the consultants' assessment of ability to perform medium work without postural limitations was more consistent with the available examination findings and the evidence as a whole. AR 29.

The Court concludes that the ALJ properly considered the supportability and consistency factors when assessing the persuasiveness of the State Agency consultants' opinions, and that the ALJ's explanation was supported by substantial evidence. *See Woods*, 32 F.4th at 792. The record includes observations from treating providers, as well as Dr. McMillan, of normal gait and strength. *See* AR 346, 481, 511–12, 521. As discussed above, Plaintiff reported to the treating

---

[5] Plaintiff contends that the ALJ further erred by failing to offer any reasons for rejecting Dr. McMillan's postural limitations. *See* Dkt. No. 23 at 16. To the contrary, in weighing the persuasiveness of Dr. McMillan's assessment, the ALJ directly found that the weight of the evidence did not support the postural limitations opined to, and specified the findings by Dr. McMillan that supported this conclusion. *See* AR 28.

9

providers and Dr. McMillan that his hernia symptoms improved to the point where surgery was deemed elective. *See* AR 344, 583, 960–61, 967. The record does contain some indications toward the beginning of the relevant time period that Plaintiff reported back pain. *See* AR 595–96 (September 2018: Plaintiff reported having back pain localized to his lower back, felt it was worse in the morning, and indicated that his weight gain might have added to his pain; Dr. Diaz opined that it was "mechanical" back pain, likely worsened by staying outdoors most of the time, but "no red flags"); AR 586–87 (October 2018: Plaintiff reported still having localized lower back pain, worse in the mornings, and had an upcoming appointment with a surgeon). An x-ray of Plaintiff's lumbar spine ordered by Dr. Diaz revealed mild retrolisthesis of L4 on L5 with extension, but no fracture of the lumbar spine. AR 591. However, Plaintiff's back pain appeared to improve with better sleeping arrangements over the course of the next few months, *see* AR 554, 561–62, 567, 968, to the point where Plaintiff had no complaints of pain. *See, e.g.*, AR 961 (no complaints of back pain in August 2019); 960 (no complaints of back pain in January 2020). The ALJ appropriately weighed this medical evidence against the postural limitations opined by Dr. McMillan, and in light of the examining physician's other findings of normal range of motion and normal neurological findings. AR 28; *see also* AR 347.

Plaintiff speculates that Dr. McMillan's RFC finding incorporating postural limitations must have been premised on the hernia, given that the remainder of the physical examination was unremarkable, and he surmises that medical records post-dating the consultants' opinions might have altered their conclusions. *See* Dkt. No. 23 at 15–16, 18. To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court declines to second-guess the ALJ's reasonable interpretation, even if such evidence could also support inferences more favorable to Plaintiff. *Molina*, 674 F.3d at 1110; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.") (citation omitted). Having considered the ALJ's explanations for why she found the consultants' assessments persuasive, as well as the record as a whole, the Court concludes that the ALJ's findings are supported by substantial evidence.

Accordingly, the Court finds that the ALJ properly considered the persuasiveness of the State Agency consultants' opinions and did not err on this ground.

### 3. Dr. Diaz

Plaintiff also contends that the ALJ erred in finding unpersuasive Dr. Diaz's medical opinion as to his physical impairments. *See* Dkt. No. 23 at 16-18. The Court finds that the ALJ's weighing of Dr. Diaz's opinion was sufficiently articulated.

Dr. Diaz's medical evaluation, completed in June 2019, consists of a three-page checkbox form. *See* AR 371–73. The ALJ found that Dr. Diaz's assessment for "essentially" sedentary work was "unsupported by accompanying treatment records, which [did] not show positive clinical findings and indicate[d] that [Plaintiff] reported having no back complaints within a few months of establishing treatment." AR 29. The ALJ further found Dr. Diaz's opinion inconsistent with Dr. McMillan's examination findings and with treatment records showing that Plaintiff denied hernia pain and was not a candidate for hernia surgery. *Id.*

Substantial evidence supports the ALJ's finding that Dr. Diaz's medical opinion regarding Plaintiff's physical impairments was not persuasive. Dr. Diaz's treatment notes post-dating the opinion at issue cut against the severe limitations set forth in his evaluation. *See* AR 554, 561–62, 567, 583, 960–61, 967–68 (treatment notes indicating Plaintiff reported no back pain or hernia pain, such that hernia surgery would be considered elective); *see also John H. v. Kijakazi*, Case No. 22-cv-02864-DMR, 2023 WL 6232561, at *5 (N.D. Cal. Sept. 25, 2023) (finding substantial evidence supported the ALJ's determination that medical opinions were not persuasive where, *inter alia*, treatment notes post-dating the evaluations documented normal mental status examinations). An ALJ may discount a doctor's opinions that are inconsistent with or unsupported by the doctor's own clinical findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see, e.g.*, *Kitchen*, 82 F.4th at 740 (upholding ALJ's determination that a medical opinion was unpersuasive where the doctor's assessment of severe limitations was inconsistent with the medical record and the doctor's own unremarkable mental status examinations). And the Ninth Circuit "ha[s] accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation." *Kitchen*, 82 F.4th at 740–41 (quoting *Ford v. Saul*, 950 F.3d 1141,

11

1155 (9th Cir. 2020) (explaining that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions") (citation omitted)).

Plaintiff further asserts that the ALJ erroneously failed to recognize that Dr. Diaz's opinion was supported by Plaintiff's testimony. *See* Dkt. No. 23 at 16. However, in interpreting the evidence in the record, ALJs are not required to address every piece of evidence, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), nor must they "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Accordingly, the Court concludes that the ALJ did not err in weighing Dr. Diaz's medical opinion.

### 4. Dr. Apostle

Plaintiff next asserts that the ALJ improperly found "generally unpersuasive" the opinion of consultive examiner Demetry Apostle, Ph.D., as to his mental impairments. Dkt. No. 23 at 18–19; *see also* AR 603–24 (Dr. Apostle's psychological evaluation). The Court agrees.

The ALJ provided the following analysis of Dr. Apostle's medical opinion:

> With regard to the claimant's mental impairments, I find the opinion of Dr. Apostle generally unpersuasive, as it does not provide a specific functional assessment and draws a general conclusion about the claimant's ability to sustain a regular job, which is an issue of disability reserved to the Commissioner. Exhibit 9F/18. While I have carefully considered the claimant's psychological testing in finding him limited to simple and low stress work as articulated in Finding 4, I note that many of the procedures administered were self-reported inventories, followed by considerable speculation in Dr. Apostle's analysis. Exhibit 9F/6. I note, for example, that despite the absence of observed or reported internal preoccupation during the evaluation, Dr. Apostle reported that the claimant appeared to be experiencing a brief psychotic episode characterized by periods of disorganized and bizarre thinking that was "[p]ossibly a phase in a more extended schizophrenic course." Exhibit 9F/15. The remaining record contains scant evidentiary support for such inference.

AR 29.[6]

---

[6] To the extent the ALJ in any way discounted Dr. Apostle's psychological testing because the procedures were premised on "self-reported inventories," Ninth Circuit authority makes clear that this reasoning is not an adequate basis for doing so with regard to mental health testing. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("the rule allowing an ALJ to reject opinions

United States District Court
Northern District of California

The ALJ erred as a threshold matter in failing to discuss the supportability and consistency of Dr. Apostle's medical opinion. The Agency "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792. The ALJ describes Dr. Apostle's medical opinion as entailing "considerable speculation," but does not identify which aspects of the medical opinion are based on speculation, or explain why they make the ultimate opinion unreliable. *See* AR 29. Highlighting a single observation in Dr. Apostle's lengthy evaluation, the ALJ summarily concludes that "[t]he remaining record contains scant evidentiary support for such inference." *Id*. However, there is no citation to where in the record this "scant evidentiary support" exists, a discussion of what this evidence is, or any explanation as to why it does not support Dr. Apostle's opinion.

Moreover, the ALJ's conclusion that there is minimal evidentiary support for Dr. Apostle's findings about the extent of Plaintiff's mental health impairments is unsupported by substantial evidence, and belied by Dr. Apostle's report itself. Contrary to the ALJ's characterization, Dr. Apostle did not merely assert speculative work-related limitations and arrive at "a general conclusion about [Plaintiff's] ability to sustain a regular job." *See* AR 29. Rather, Dr. Apostle's findings about Plaintiff's functional impairments followed an extensive discussion of his mental health status, the resulting limitations, and the effect that these limitations would have on his ability to work. *See* AR 609–20. The ALJ also reasoned that Dr. Apostle's evaluation was unpersuasive because Dr. Apostle did not provide a specific functional assessment. AR 29. However, as Plaintiff notes, Dkt. No. 23 at 18, Dr. Apostle did provide a functional assessment, opining that Plaintiff would have marked impairments in all four "paragraph B" criteria. *See* AR 624. Defendant contends that this functional assessment is inadequate because "the RFC requires

---

based on self-reports does not apply in the same manner to opinions regarding mental illness."); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (citation omitted). On remand, the ALJ should reconsider the self-reported nature of the psychological testing administered in this case in accordance with applicable Ninth Circuit authority.

13

specific functional limitations; it does not frame Plaintiff's limitations on a range (e.g., none, mild, moderate, marked, extreme)." Dkt. No. 24 at 14 (emphasis omitted). The Court is not persuaded. "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545); *see also Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citation omitted). That Dr. Apostle did not frame functional limitations in the RFC's precise terms, when formulation of the RFC was the responsibility of the ALJ, does not render the doctor's resulting medical opinion unpersuasive.

Accordingly, the Court finds that the ALJ's analysis of Dr. Apostle's medical opinion is not supported by substantial evidence. *See Woods*, 32 F.4th at 792; *see also* 42 U.S.C. § 405(g). On remand, if the ALJ still finds Dr. Apostle's opinion unpersuasive, the ALJ must support that conclusion consistent with the Ninth Circuit's requirements.

### 5. Dr. Kollath

Finally, Plaintiff argues that the ALJ improperly found "generally persuasive" the opinion of consultive examiner Ute Kollath, Ph.D., as to his mental impairments. Dkt. No. 23 at 19–20; *see also* AR 338–42 (Dr. Kollath's psychological evaluation). As with the ALJ's treatment of Dr. Apostle's opinion, the Court agrees with this claim of error.

The ALJ's analysis of Dr. Kollath's opinion is as follows:

> I find the opinion of Dr. Kollath generally persuasive, as it is supported by the claimant's testing, mental status examination, and reported activities at the time of the examination and is consistent with mental status findings in treatment. Exhibit 1F; see Exhibit 7F/118 (and passim). While the claimant testified that he did not return for mental health treatment after an initial session in September 2018 due to anxiety talking with others, the claimant has been able to seek treatment for various other conditions and was able to provide a detailed and candid personal history during the September 2019 evaluation. Exhibits 7F; 9F. Despite his allegations of disabling mental impairment, he has been able to seek and perform work at SGA levels. Neither his testimony nor the written record indicates that he stopped working because he was mentally incapable of performing the work. Exhibit 1F/1; Hearing Testimony. The claimant remains capable of navigating public transportation, attending church regularly, and of remembering to take his daily medications. He has reported capacity to cut down his alcohol consumption, and has

14

       denied significant concern about his current use. Exhibits 7F/117; 12F/1, 8, 9.

AR 29.

  However, the ALJ's factual recitation of Plaintiff's reports of his alcohol use or his capacity to find and sustain work is inconsistent with the record fairly read as a whole. First, although Plaintiff briefly denied significant concerns about his alcohol use in 2018, *see* AR 349, 587, the ALJ ignores his consistent reports in treatment notes thereafter of long-term alcohol use causing "blackouts" and the fact that he was ultimately treated with pain medication for alcohol cessation assistance. *See, e.g.,* AR 377, 379, 554, 561–62, 576, 580, 968; *see also* AR 87, 103 (disability determinations noting a secondary diagnosis of "Substance Addiction Disorders (Alcohol)"); AR 344 (Dr. McMillan noting Plaintiff represented a history of having alcohol-related memory blackouts); AR 617 (Dr. Apostle noting that "recurrent periods of alcohol abuse appear to be a major problem for [Plaintiff]. Characteristically moody and impulsive, his behavior becomes intensified when he is drinking heavily."). Plaintiff's alcohol abuse was so prevalent that at Step Two, the ALJ had found it to be a severe impairment. *See* AR 22.

  Second, citing no evidence, the ALJ concludes that "[d]espite his allegations of disabling mental impairment, he has been able to seek and perform work at SGA levels." AR 29. This finding ignores that Plaintiff was laid off from his last job because he did not come to work for three days and blacked out, *see* AR 338, or Plaintiff's reports that he has a hard time keeping a job due to his memory issues, *see, e.g.*, AR 595. While ALJs need not exhaustively recite the entire record, *Howard*, 341 F.3d at 1012, their factual characterizations must be fair considering the longitudinal record as a whole. *See, e.g., Anthony M. W. v. Comm'r of Soc. Sec.*, Case No. 21-CV-08018-RMI, 2023 WL 2352238, at *6 (N.D. Cal. Mar. 3, 2023) ("The ALJ's reliance on a *single* report by the Plaintiff that his 'shoulder is functional and comfortable' ignores over a decade of prior complaints of shoulder pain and associated limitations. Even more significantly, the ALJ ignored evidence of both pain and limitations that *followed* Plaintiff's statement.") (citations omitted) (emphasis in original); *Lilita H. v. Kijakazi*, Case No. 21-CV-04063-JSC, 2022 WL 4225395, at *5 (N.D. Cal. Sept. 13, 2022) (finding substantial evidence did not support the ALJ's reliance on a job, from which the plaintiff was terminated, as a basis for finding limitations opined

15

by a consultive examiner unsupported by the record).

Accordingly, the Court finds that the ALJ's analysis of Dr. Kollath's medical opinion is not supported by substantial evidence. *See Woods*, 32 F.4th at 792; *see also* 42 U.S.C. § 405(g). If the ALJ still determines that Dr. Kollath's opinion is "generally persuasive" on remand, the ALJ must provide conclusions supported by substantial evidence in light of the medical record fairly read as a whole.

## IV.  RELIEF

In sum, the Court finds that the ALJ's decision at Step Two was supported by substantial evidence, but finds that the ALJ erred in the analysis of two medical opinions as to Plaintiff's mental impairments. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citation omitted). A court may, in its discretion, grant a direct award of benefits when certain conditions are met. *Id.* To order that rare remedy, the Court must conclude that (1) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (2) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence;" and (3) if the evidence "were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (footnote and citations omitted).

Here, although the Court finds that the ALJ erred in the assessment of two of the medical opinions in this case, it cannot conclude that "further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison*, 759 F.3d at 1020). The record "raises crucial questions" about the extent to which Plaintiff's mental impairments render him disabled. *Id.* For example, Dr. Apostle opined that Plaintiff was severely impaired as to attention, concentration, and executive functioning. *See* AR 609. If the ALJ credits Dr. Apostle's medical opinion upon remand, that determination could bear on the ALJ's ultimate disability finding. Accordingly, the Court remands to allow for proper consideration of the evidence of record and for any additional investigation. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may revers[e] the decision of the

16

Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotation marks and citations omitted).

Because the case is being remanded, the Court need not address Plaintiff's claim as to whether substantial evidence supported the ALJ's finding that he did not meet the "paragraph B" criteria. *See* Dkt. No. 23 at 11–15. It is appropriate for the ALJ to address this issue on remand.

## V. CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment, Dkt. No. 23, and **DENIES** Defendant's cross-motion for summary judgment, Dkt. No. 24. The Court **REMANDS** this case to the SSA for further proceedings on an open record consistent with this order. The Clerk is directed to enter judgment in favor of Plaintiff and close the case.

**IT IS SO ORDERED.**

Dated: 3/31/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

17